IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No.  09-744-05 (SD) |
| HAMZE EL-NAJJAR<br>    a/k/a "Hamze Al-Najjar" | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant actively participated in the trafficking of nearly $200,000 worth of counterfeit and purportedly stolen goods.  He committed this crime while residing in the United States without any lawful immigration status.  The defendant has already received substantial leniency, as reflected in the stipulations in the parties' plea agreement, and a Guidelines sentence provides an appropriate punishment under all of the circumstances.

I.      **BACKGROUND**

In November 2008, El-Najjar and his associates met with a cooperating witness (the "CW") in Philadelphia and Staten Island, New York, to purchase purportedly stolen electronics and counterfeit Nike® shoes for resale.  El-Najjar's interactions with the CW were captured on audio and video recordings.  In a post-arrest statement, El-Najjar confirmed to law enforcement officers that he participated in these offenses while knowing that the shoes were counterfeit and knowing that the CW obtained the electronics "in an illegal way."  Following his arrest, law enforcement officers found one of the purportedly stolen computers in El-Najjar's home.

On March 22, 2010, the defendant pleaded guilty to two counts relating to his participation in conspiracies to traffic in counterfeit goods and transport stolen property in interstate and foreign commerce, all in violation of 18 U.S.C. §§ 371, 2314, and 2320.  The

stipulations in the parties' plea agreement agreed that, with respect to the electronics, the government would only seek to hold Najjar responsible for the purportedly stolen computers and <u>not</u> seek to prove his responsibility for the purportedly stolen cellular telephones based on the greater clarity of Najjar's knowledge of the stolen status of the computers.

## II.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence.

The statutory maximum sentences for <u>each</u> of the two counts of conviction are: 5 years imprisonment, a $250,000 fine, three years supervised release, full restitution, and $100 mandatory assessment.  Thus, the **total maximum sentence** is 10 years imprisonment, 3 years supervised release, a $500,000 fine, full restitution, and a $200 mandatory assessment.

### B.   Sentencing Guidelines Calculation.

The Probation Department's Presentence Investigation Report (PSR) calculated the defendant's offense level to be 15, which, taken together with his Criminal History Category I, yields an advisory guideline range of 18 to 24 months.  The parties' plea agreement stipulated that the appropriate, advisory guideline range was 12 to 18 months (based on an offense level of 13), as described above.  As part of that agreement, Najjar agreed not to request any further downward departure on any grounds.

## III.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the most appropriate sentence is one within the advisory guideline range of 12 to 18 months.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38 (2007). While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*" Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).[*]

The need for deterrence, both general and specific, justifies a within-guideline sentence of incarceration.  The defendant's conviction and sentence will serve as a warning to others similarly situated that there are severe consequences to an activity that *seems* harmless and victimless: trafficking in counterfeit and purportedly stolen merchandise.  In fact, solely with respect to the counterfeiting aspect of the defendant's criminal conduct, this is a multi-*billion* dollar criminal industry that deprives American companies of vast amounts of legitimate sales.  Counterfeit goods are simply another form of contraband, like narcotics, that can be trafficked for high profits.  If the sanction in this and similar cases is too lenient, others will be encouraged to try their hand at such trafficking because, practically speaking, there would be little to lose by such an attempt— certainly less to lose than the risks inherent in other contraband trafficking.

Specific deterrence is also an important consideration in this case.  Najjar knowingly allowed co-defendant Moussa Hamdan to use the bank accounts of his companies to conduct and

---

[*]     Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"  United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

hide criminal activity. Indeed, Najjar used these same accounts — through which over $10,000,000 flowed from international sources since mid-2006 — for the charged criminal activity in this case. Such high-volume bank accounts allowed Hamdan to hide his criminal transactions with relative ease.

The defendant has already received extreme leniency through the parties' plea agreement. Further leniency is unwarranted. Rather, a sentence between 12 and 18 months strikes the appropriate balance between compassion and recognition of the seriousness of the defendant's offense and the need to deter its commission by others.

## IV.    CONCLUSION

Accordingly, the government respectfully recommends a sentence within the range of 12 to 18 months imprisonment.

                                        Respectfully submitted,

                                        ZANE DAVID MEMEGER
                                        United States Attorney

                                         /s/
                                        NANCY WINTER/STEPHEN MILLER
                                        Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by electronic mail upon counsel for defendant:

Jeffrey M. Miller, Esq.
Nasuti & Miller
150 S. Independence Mall West
The Public Ledger Building, Suite 1064
Philadelphia, PA 19106


    /s/
STEPHEN A. MILLER
Assistant United States Attorney

Date: June 7, 2010